## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN DERAFFELE, | : | CIVIL NO: 4:14-CV-01849 |
| | : | |
| Plaintiff, | : | |
| | : | (Judge Brann) |
| v. | : | |
| | : | |
| CITY OF WILLIAMSPORT, *et al.*, | : | |
| | : | (Magistrate Judge Schwab) |
| Defendants. | : | |

## REPORT AND RECOMMENDATIONS

In this civil action, proceeding *via* an amended complaint, the *pro se* plaintiff, John DeRaffele ("DeRaffele"), brings federal constitutional claims pursuant to 42 U.S.C. § 1983. Additionally, DeRaffele appears to raise as-applied and facial challenges to the City of Williamsport's 2013 Rental Ordinance (the "Ordinance"), as well as claims sounding in Pennsylvania state law. Pending before the Court is the defendants' motion to dismiss. Our recommendations follow.

## I.    **Background and Relevant Procedural History.**

On September 23, 2014, DeRaffele, who paid the filing fee, initiated this lawsuit by filing a civil complaint, *Doc.* 1, and, approximately two weeks later, on October 7, 2014, he filed the amended complaint under review. *Doc.* 5. In the amended complaint, DeRaffele names the following seven defendants: (1) the City of Williamsport ("Williamsport" or the "City"); (2) Gabriel Campana

("Campana"), the Mayor of Williamsport; (3) Gregory Foresman ("Foresman"), Williamsport's Police Chief; (4) Timothy Miller ("Miller"), a Williamsport Police Captain; (5) Michael Orwig ("Orwig"), a Williamsport Police Captain; (6) Joseph Girardi ("Girardi"), the Codes Administrator for Williamsport's Bureau of Codes (the "Bureau"); and (7) the Williamsport Appeals Board (the "Board").[1]  *Doc.* 5 at 2-5.

Although we are able to easily identify the defendants named in the amended complaint, we find DeRaffele's pleading to be otherwise muddled and, at times, difficult to follow.  Nevertheless, we have managed to discern the following claims and allegations, which will be set forth pursuant to the Rule 12(b)(6) legal standard, *infra*.

DeRaffele, who is a licensed real estate broker, owns, among other properties, a four-family home located at 727-729 West 4th Street in Williamsport, Pennsylvania.  On July 28, 2014, DeRaffele received a call from one of his tenants residing at 729 West 4th Street, Apartment 1-R ("Apartment 1-R").  The tenant told DeRaffele that the home was surrounded by police officers.  According to DeRaffele, Apartment 1-R was searched by the police.  *See id.* at ¶ 17, p. 18.

---

[1]    As the defendants point out, DeRaffele actually filed an appeal of his condemnation proceedings – to be discussed, *infra* – with the "Housing Appeal Board of the City of Williamsport."  *See Doc.* 19 at 42 n. 5.  For purposes of resolving the pending dispositive motion, we presume that the two entities are one in the same.

After talking with the tenant in Apartment 1-R, DeRaffele spoke to his tenant residing at 727 West 4th Street, Apartment 2-L ("Apartment 2-L").  Said tenant told DeRaffele that "Police officials" were looking for someone.  *Doc.* 5 at ¶ 17, p. 11.  The same tenant also told DeRaffele that he gave the police officials permission to search for the person in his apartment.  During the search, the police discovered guns and drugs, and the occupants were arrested.  According to DeRaffele, the police caused damage to the property during the search.  *Id.* at ¶ 27, p. 33.  DeRaffele would also later learn that the police were looking for a parolee.  To his knowledge, the parolee was not found in Apartment 2-L.

Later, on the same date, DeRaffele was informed that a search warrant was issued for the Second Floor apartment at 729 West 4th Street.  Said apartment was vacant.  Moreover, the search warrant for the Second Floor apartment was sought after the initial search at Apartment 2-L had turned up drugs and guns.  *See Doc.* 2-1 at 41.  Upon learning this information about the search warrant for the Second Floor apartment, DeRaffele sent his "designated person," Jeff Swank ("Swank"), to the property.

In the afternoon, DeRaffele received a phone call from Tom Evansky ("Evansky"), an employee with the Bureau.  Evansky told DeRaffele that he was condemning Apartment 1-R because there was a fallen electrical wire in the yard.  DeRaffele immediately called his electrician at Dale Electric.  The electric

company reported to DeRaffele that the wire, which was knocked down by a moving company, was not active.   Still, a condemnation notice was posted at Apartment 1-R.  Also, within the same 24-hour period, a condemnation notice was posted to the Second Floor Apartment "for absolutely no reason."  *Id.* at ¶ 17, p. 13.

The following day, on July 29, 2014, DeRaffele arrived in Williamsport and met with Girardi at City Hall, in the Bureau's Offices.   During their meeting, DeRaffele explained that the wire on the ground was not active.  As such, Girardi explained that he would make the correction to the condemnation of the apartments at 729 West 4th Street.   According to DeRaffele, however, the condemnation remained in effect until he had a hearing on September 19, 2014. *Id.*

After meeting with Girardi, DeRaffele went to the front desk at the Bureau's Office to file for two permits.  Suddenly, Foresman appeared and began screaming at DeRaffele, wanting to see him in his office.  DeRaffele subsequently met with Foresman in his office, on the second floor at City Hall.  Orwig and Miller were also present.

During this meeting, Foresman accused DeRaffele of renting property to drug dealers, which, in turn, was destroying Williamsport.   As such, Foresman complained that DeRaffele should not be allowed to operate in Williamsport.  After those comments were made, DeRaffele said that he was not going to be

4

talked to like that.  In response thereto, Foresman got angry and stormed out of the meeting.  Once Foresman left the meeting, DeRaffele asked Orwig to run a police report on the 13 residences he owns in Williamsport.  Orwig complied, and the report turned up no drug activity at any of the 13 properties DeRaffele allegedly owned.  DeRaffele thus said to Orwig that Foresman owed him an apology.  Orwig, however, got angry at DeRaffele's comment.  Immediately thereafter, Orwig and Miller both commented that DeRaffele's properties are filled with drug dealers; DeRaffele did not belong in Williamsport; DeRaffele doesn't properly supervise his properties; DeRaffele's maintenance men should be inspecting the properties to ensure that only those on the lease are residing there; DeRaffele does not care about Williamsport; DeRaffele and other property investors are responsible for the drug dealers in Williamsport; DeRaffele's tenants are low lives; police are continually going to DeRaffele's properties; DeRaffele does not have the right to provide long-term leases; and DeRaffele should be doing criminal background checks. *Id.* at ¶ 17, pp. 15-16.  In addition, Miller said that he has the power to, and will, shut down DeRaffele's rental properties.  Further, Orwig and Miller asked DeRaffele for the names of the Magisterial District Justices with whom he typically dealt.  After these comments were made, DeRaffele left City Hall.

5

After leaving City Hall, DeRaffele called Campana to arrange a meeting and also called an attorney at "Legal Aid," in addition to two Magisterial District Justices. DeRaffele further sent letters to the United States Attorney's Office and the Attorney General of Pennsylvania, describing his encounter at City Hall.

A couple of days later, on August 3, 2014, the police showed up to Apartment 1-R. DeRaffele had been informed that the police were there in response to a 9-1-1 call that had been placed from that address, from a child. One of DeRaffele's tenants residing there told the police that her child had been sleeping. The same tenant, as well, showed the police her phone to prove that no call had been made from Apartment 1-R.

The following day, on August 4, 2014, DeRaffele met with Campana to discuss what had happened at City Hall a week prior. After DeRaffele presented his version of what happened, Campana, who seemed concerned, said that he would look into the matter. DeRaffele and Campana proceeded to discuss the Ordinance that had gone into effect. DeRaffele expressed that he did not believe the Ordinance was constitutional because "it violated the rights of the landlords and tenants and was discriminating in nature." *Id.* at ¶ 18, p. 19. In reply, Campana told DeRaffele that the Supreme Court had approved the Ordinance. *Id.* Not believing Campana's statement to be true, DeRaffele researched the legality of the Ordinance. During DeRaffele's research, he could never quite figure out the

truth of Campana's statement to him regarding the Ordinance.  *See Doc.* 5 at ¶ 28, p. 36.   Yet, DeRaffele discovered letters authored by Miller.   DeRaffele alleges that the letter provided in part: "Law enforcement has evolved all across the country except in Williamsport.   We are expected to rely on good old fashioned police work.   Good old fashioned police work worked on Williamsport's 'good ole boys' of the 70's and 80's but we are no longer dealing with the 'good ole boys.' We are dealing with a much more hardened and determined group that are willing to destroy Williamsport as a means of their own survival."  *Id.* at ¶ 18, p. 20.

On August 11, 2014, DeRaffele received a judgment and order of eviction for the tenant in Apartment 2-L, where the drugs and guns were found.   According to DeRaffele, the tenant is out of the unit.

On August 21, 2014, DeRaffele received a letter from the Solicitor's Office in response to correspondence he had earlier mailed.   In the letter, the Solicitor pointed out that 729 West 4th Street was condemned because of an arrest that had occurred there relating to drug and gun activity, stemming from the search of the apartment on July 28.  *Doc.* 5-1 at 70.   However, the search and arrests occurred at Apartment 2-L, at 727 West 4th Street.    Nevertheless, the Solicitor informed DeRaffele that 729 West 4th Street would remain formally closed until January 28, 2015, unless resolved by the parties.  *Id.*   The Solicitor further noted that DeRaffele could request an opportunity to meet with the Codes Administrator to determine

whether the claimed violation may be resolved and may further request a meeting, file an appeal, or both. *Id.* Accordingly, DeRaffele appealed to the Board, proceeding on a defense that the wrong property had been condemned, primarily because the wrong apartment, i.e. the Second Floor Apartment, was listed in the issued search warrant. *See id.* at 71.

On September 19, 2014, DeRaffele appeared before the Board for a hearing on the condemnation of the property at 729 West 4th Street. At this hearing, the Board members asked questions, made statements, and permitted the presentation of evidence and testimony. Furthermore, DeRaffele had an opportunity to address the Board. DeRaffele, however, alleges that the Board was not impartial and the evidence presented was "bogus." In part, DeRaffele became frustrated because the Board would not recognize that the wrong property had allegedly been condemned. As a result, DeRaffele voluntarily terminated the hearing and informed the Board of his intent to file a lawsuit. *Doc.* 5 at ¶ 23, p. 29.

Following the hearing, DeRaffele alleges that he never received a determination from the Board. DeRaffele also does not allege that the property associated with the 727 West 4th Street address was ever condemned by the Bureau or the Board; however, he does allege that he voluntarily "posted" Apartment 2-L in order to "rectify and alleviate" the condemnation of the Second Floor

Apartment.   According to DeRaffele, he took said action because he wanted to continue trying to rent it to tenants.

Based on these allegations, DeRaffele seeks compensatory and punitive damages, in addition to declaratory and injunctive relief, for the following:

(1) his inability to rent two apartments located at 727 – 729 West 4th Street in that the two properties have been subject to condemnation;

(2) the "illegal search" at Apartment 1-R and "for the harassment [to his tenants there] on August 3, 2014;"

(3) the facial invalidity of the Ordinance;[2]

(4) "threats and intimidation" lodged against him by Foresman, Orwig, and Miller on July 30, 2014;

(5) being denied with procedural due process protections at the Board hearing on the condemnation of his property at 729 West 4th Street, in that the Board was not "impartial;" and

(6) being "intentionally lied" to by Campana about the constitutionality of the Ordinance.

*Doc.* 5 at ¶ 28, pp. 34-38.[3]

On October 8, 2014, after filing the amended complaint, DeRaffele paid the requisite filing fee.   Subsequently, on October 21, 2014, the defendants had

---

[2]     For sake of brevity, we refer the reader of this Report to *Doc.* 5-1 at 1-29, for a copy of the Ordinance.

[3]     The running theme behind these claims, including his facial challenge to the Ordinance, is that his rights and the rights of his tenants, protected by the First, Fourth, Fifth, and Fourteenth Amendments of the United States Constitution, were, or are being, violated.  *See generally, Doc.* 5.

counsel enter an appearance and filed the pending motion to dismiss.  *See Docs.* 8, 19, 33 & 41.

After the parties filed their respective briefs, we issued a show-cause order asking the defendants to address the following: (1) whether DeRaffele's brief-in-opposition should be construed as clarifying that he does not facially challenge the Ordinance; (2) whether DeRaffele has Article III and / or prudential standing to raise a facial challenge, an as-applied challenge, or both, on behalf of his tenants; and (3) standing issues aside, if DeRaffele is solely raising an as-applied challenge to the Ordinance, whether it should be dismissed under the 12(b)(6) legal standard. *Doc.* 47.  This Order was issued given the lack of focus and clarity in the amended complaint, coupled with DeRaffele's arguments in his brief-in-opposition.   On May 11, 2015, the defendants filed their brief in response to our Order, contending that DeRaffele appears to make facial and as-applied challenges to the Ordinance and he otherwise lacks standing to raise claims on behalf of his tenants.  *See Doc.* 54.  Thereafter, on May 26, 2015, DeRaffele filed a reply brief to our Order.  *Doc.* 56.   In this brief, DeRaffele appears to have switched gears by addressing challenges to the Ordinance that were never previously addressed and do not appear to be alleged in the amended complaint.  *See id.*  Indeed, among other things, DeRaffele newly asserts that the Ordinance violates the Eighth Amendment.  *See id.* at 11, 13.  As such, we are left with more questions than

10

answers about DeRaffele's challenges to the Ordinance.  Nevertheless, the parties have fully briefed the pending dismissal motion, making the motion ripe for disposition by the Court.

## II.   **Legal Standard.**

Defendants move for dismissal of DeRaffele's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Rule 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." Under Rule 12(b)(6), we must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008)).  While a complaint need only contain "a short and plain statement of the claim," Fed.R.Civ.P. 8(a)(2), and detailed factual allegations are not required, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). "[L]abels and conclusions" are not enough, and a court is "'not bound to accept as true a legal

conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoted case omitted).

In resolving a motion to dismiss, we thus "conduct a two-part analysis." *Fowler, supra*, 578 F.3d at 210. First, we separate the factual elements from the legal elements and disregard the legal conclusions. *Id.* at 210–11. Second, we "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoted case omitted).

While traditionally focused upon the allegations contained in a complaint, a court may also consider exhibits attached to a complaint, matters of public record, and "an undisputedly authentic document" relied upon by the plaintiff and attached as an exhibit to a defendant's motion to dismiss. *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).  Moreover, in a case such as this, a complaint filed by a *pro se* litigant is to be liberally construed and held to a less stringent standard than formal complaints drafted by a lawyer. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).  Nevertheless, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

## III.   Discussion.

### A. The Civil Rights Statute, 42 U.S.C. § 1983.

It appears to us that DeRaffele intends on raising claims under 42 U.S.C.   § 1983 for perceived violations of his and his tenant's First, Fourth, Fifth, and Fourteenth Amendment Rights.   In pertinent part, § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

*See also, Gonzaga Univ. v. Doe*, 536 U.S. 273, 284–85 (2002); *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996).  "Section 1983 is not a source of substantive rights, but merely a method to vindicate violations of federal law committed by state actors." *Pappas v. City of Lebanon*, 331 F.Supp.2d 311, 315 (M.D. Pa. 2004) (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284–85 (2002)).  To establish a claim under § 1983, a plaintiff must show that (1) the conduct complained of was committed by persons acting under color of state law and (2) the conduct violated a right, privilege, or immunity secured by the Constitution or laws of the United States. *Harvey v. Plains Twp. Police Dep't*, 421 F.3d 185, 189 (3d Cir. 2005) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)).  Importantly, the Third Circuit has also reiterated: "[t]he first step in evaluating a [S]ection 1983 claim is to

13

identify the exact contours of the underlying right said to have been violated and to [then] determine whether the plaintiff has alleged a deprivation of a constitutional right at all." *Morrow v. Balaski*, 719 F.3d 160, 165-66 (3d Cir. 2013) (*en banc*)(internal quotations and quoted case omitted); *see County of Sacramento v. Lewis*, 523 U.S. 833, 841 (1998).

Also, in the § 1983 context, with respect to entities such as Williamsport, the Supreme Court determined that, while municipal bodies may not be liable solely for violations perpetrated by its employees or agents, "it [may be liable] when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell v. Department of Social Services of City of New York,* 436 U.S. 658, 694 (1978). A policy is a decision of a municipality's "duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." *Board of County Commissioners of Bryan County, Okl. v. Brown*, 520 U.S. 397, 403–4 (1997); *see also, Kocher v. Larksville Borough*, 548 F App'x 813, 821 (3d Cir. 2013). A custom is any practice "that has not been formally approved by an appropriate decisionmaker" but "is so widespread as to have the force of law." *Id.* at 404.

### 1. Standing to Raise the Tenants' § 1983 Claims.

In light of the § 1983 claims DeRaffele seeks to bring on behalf of his tenants, we must address the issue of standing, which asks "whether the litigant[s] [are] entitled to have [a] court decide the merits of the dispute." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). "From Article III's limitation of the judicial power to resolving 'Cases' and 'Controversies,' and the separation-of-powers principles underlying that limitation," the Supreme Court has deduced a set of requirements that together make up the "irreducible constitutional minimum of standing." *Lexmark Intern., Inc. v. Static Control Components, Inc.*, 134 S.Ct. 1377, 1386 (2014)(quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Those requirements insist on a showing that "[t]he plaintiff . . . suffered or be imminently threatened with a concrete and particularized 'injury in fact' that is fairly traceable to the challenged action of the defendant and likely to be redressed by a favorable judicial decision." *Id.; see Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 278 (3d Cir. 2014).

In addition to these constitutionally required elements, the Supreme Court has "averted to a 'prudential' branch of standing, a doctrine not derived from Article III and 'not exhaustively defined' but encompassing . . . at least three broad principles: 'the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately

addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked.'" *Lexmark*, 134 S.Ct. at 1386 (quoting *Elk Grove Unified School Dist. v. Newdow*, 542 U.S. 1, 12 (2004) and *Allen v. Wright*, 468 U.S. 737, 751 (1984)); *Lozano v. City of Hazleton*, 620 F.3d 170, 183 (3d Cir. 2010), *cert. granted, judgment vacated, and case remanded on other grounds*, 131 S.Ct. 2958 (2011).

Here, DeRaffele attempts to raise several constitutional claims on behalf of himself and his tenants. Among those claims, DeRaffele asserts that both he and his tenants' First, Fourth, Fifth, and Fourteenth Amendment rights were violated. The defendants nevertheless contend that DeRaffele lacks standing to raise these constitutional claims on behalf of his tenants. *See Doc.* 19 at 22-23. In opposition, DeRaffele contends that the claims on behalf of his tenants should proceed because "the violations committed against [him] and the tenant[s] are . . . egregious. . . ." *Doc.* 33 at 25. DeRaffele also argues that he has standing to sue on behalf of the tenants, for constitutional violations, through lease agreements he maintained (or maintains) with them, and that his tenants cannot afford to litigate and fear retribution from Williamsport officials. *See id.; Doc.* 56 at 20.

We agree with the defendants that DeRaffele lacks first-party standing to sue under § 1983 on behalf of his tenants based on what is pleaded in the amended complaint. Indeed, the prudential standing doctrine that generally prohibits raising

16

another person's legal rights encompasses constitutional-civil-rights claims such as the ones attempted to be raised in this lawsuit. *See Stukes v. Knowles*, 229 F. App'x 151, 152 n. 1 (3d Cir. 2007)(quoting *O'Malley v. Brierley*, 477 F.2d 785, 789 (3d Cir. 1973)). Nevertheless, DeRaffele may overcome the prudential-standing doctrine's prohibition on raising the rights of others by showing that he may be conferred with third-party-standing status.[4]

To be conferred with third-party-standing status, DeRaffele must demonstrate that: (1) he has suffered an "injury in fact" that provides him [or her] with a "sufficiently concrete interest in the outcome of the issue in dispute"; (2) he has a "close relation to the third party"; and (3) there exists "some hindrance to the third party's ability to protect his or her own interests." *King v. Governor of the State of New Jersey*, 767 F.3d 216, 243 (3d Cir. 2014) (quoting *Powers v. Ohio*, 499 U.S. 400, 410–11 (1991)). Regarding the third element, a person may assert the rights of a third party not before the court if there are substantial obstacles to the third party asserting his or her own rights and if there is reason to believe that the advocate will effectively represent the interests of the third party. *See Secretary of State v. J.H. Munson Co.*, 467 U.S. 947, 956 (1984).

Assuming for argument's sake that DeRaffele successfully pleads that he suffered an injury-in-fact and that he shares a special relationship with the tenants,

---

[4] The parties do not argue, and we are not otherwise convinced, that either of the other two prudential doctrines applies or can be overcome.

through the lease agreements, he has not shown that the tenants face a substantial obstacle to asserting their own rights and interests.[5] *See Miller v. Albright,* 523 U.S. 420, 449-50 (1998)(O'Connor, J., concurring)(providing examples of when the Court has permitted third-party standing to be conferred on a litigant); *cf., e.g., Behar v. Pennsylvania Dept. of Transp.*, 791 F.Supp.2d 383, 409-10 (M.D. Pa. 2011) (finding that "the stigma associated with mental health treatment presents an obstacle to a challenge of the PennDOT regulation by patients themselves."). DeRaffele also fails to persuade us, through his briefs and / or allegations in the amended complaint, that there is any reason to believe he will effectively represent the interests of the tenants.   Accordingly, we recommend that DeRaffele's constitutional claims on behalf of his tenants, under § 1983, be dismissed for a lack of standing.

## 2. The Board.

According to the Board, it should be dismissed from the lawsuit because it has no distinct existence from Williamsport, the municipality at-large, which is also named as a defendant here.  *Doc.* 19 at 42-43.   In opposition, DeRaffele

---

[5]    The financial status of an individual is not, alone, sufficient to satisfy the third element, especially in light of the *in-forma-pauperis* statute, 28 U.S.C. § 1915, which is designed to provide access to the courts for indigent litigants.  Thus, to the extent DeRaffele solely relies on the financial status of the tenant who lived in Apartment 1-R, *see Doc.* 33 at 26, he fails to satisfy the third element in order to overcome the prudential-standing prohibition on raising the claims of another.

provides no convincing argument; instead, he merely contends that all of the Board members should be held accountable and that he will prove during trial that the Board members participated in violating his rights.  *See Doc.* 33 at 45.

In *Monell*, the Supreme Court determined that municipalities and other local governments are "persons" under § 1983 that may be sued upon a satisfaction of certain elements.   Following *Monell*, courts within the Third Circuit have not hesitated to dismiss from lawsuits a local government's sub-units or departments performing essential public functions on part of the local government at-large. *See, e.g., Johnson v. City of Erie, Pennsylvania*, 834 F.Supp. 873, 878-79 (W.D. Pa. 1993)(observing that a police department is not amenable to suit since it "is a sub-unit of the city government and, as such, is merely a vehicle through which the city fulfills its policing functions.").

Regarding the Board in this case, the Ordinance at issue provides, in relevant part:

> (o) ***Creation of Housing Appeals Board***.  [Williamsport] hereby creates a Housing Appeals Board, which shall be a five (5) member board of City residents who are familiar with the housing matters, including, but not limited to, real estate agents / brokers, those with experience in law enforcement, registered professionals . . . and others familiar with code enforcement, construction, and landlord / tenant matters.  The members of the Board shall serve for four (4) year terms, and will hear all appeals from enforcement under this Ordinance unless otherwise specified.  These members shall be appointed by the Mayor of [Williamsport] and approved by the City Council.  This will

> allow for an objective review of the City's actions regarding
> enforcement of this Ordinance.

*Doc.* 5-1 at 21.

Based on our reading of this subsection of the Ordinance, we do not doubt that the Board serves an essential public function. Furthermore, it is readily apparent that the Board in this case is nothing more than an arm of the City of Williamsport at-large. Indeed, nothing in the amended complaint plausibly suggests that the Board has policy- or custom- or law-making authority. To the contrary, the allegations and subsection quoted above solely suggest that the Board's purpose is to objectively determine compliance with code sections enacted and enforced by Williamsport at-large. One could reasonably assume therefore that any liability flowing from the Board, for any violations of the law in the housing context, would automatically flow to the City of Williamsport at-large and not separately to the Board. As such, it is redundant to include both the Board and Williamsport as defendants in this action. Coupled with the fact that DeRaffele does not provide any convincing argument as to why a contrary result should not be reached, we recommend that the Board be dismissed with prejudice from this lawsuit.

### 3. Official-Capacity Claims.

Next, as the individually-named defendants point out, *Doc.* 19 at 32-33, an official-capacity suit against employees of a municipality is the same as a suit

against the municipality itself, when both a municipality and its employees are sued. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent.")(quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)); *see also, Graham*, 473 U.S. at 165 (holding that "[t]here is no longer a need to bring official-capacity actions against local government officials, for under *Monell* . . . local government units can be sued directly for damages and injunctive or declaratory relief."). Accordingly, we recommend that DeRaffele's suit against the defendant-employees of Williamsport, in their official capacities, be dismissed with prejudice. *See also, Rankin v. Majikes*, No. 14-699, 2014 WL 6893693, at *6 (M.D. Pa. Dec. 5, 2014)(dismissing official-capacity claims and collecting cases from courts doing the same throughout the Third Circuit).

### 4. Punitive Damages.

Williamsport argues for the dismissal of DeRaffele's request for punitive damages under § 1983. To the extent DeRaffele requests punitive damages against Williamsport under § 1983, the request should be dismissed with prejudice as a matter of law since a municipality enjoys immunity from punitive damages. *See Smith v. Borough of Dunmore*, 633 F.3d 176, 183 (3d Cir. 2011)(quoting *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981)).

## 5. The First Amendment.

Throughout the amended complaint, DeRaffele avers that he raises a First Amendment claim on his own behalf.  The First Amendment of the United States Constitution provides:

> Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

U.S. CONST. Amend I.  Based on the allegations in the amended complaint, coupled with the outlined causes of action, we fail to see where DeRaffele has plausibly alleged that his First Amendment rights were violated by the defendants. Indeed this claim is "so undeveloped that it does not provide a defendant [with] the type of notice of claim which is contemplated by Rule 8."  *Phillips v. County of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008); *see also, Airborne Beepers & Video, Inc.*, *v. AT & T Mobility LLC*, 499, F.3d 663, 667 (7th Cir. 2007).  The defendants assert that DeRaffele intends on raising a retaliation claim under the First Amendment, *see Doc.* 19 at 49-50; however, DeRaffele never addresses the defendants' assertion in opposing the dismissal motion.  Given DeRaffele's failure to address the claim as identified by the defendants, we do not address it in this Report, and do not construe the amended complaint to include the same.

Furthermore, as far as we can tell, the only time DeRaffele appears to clearly invoke the First Amendment is when he cites a case in his brief-in-opposition holding that a more stringent vagueness test should apply to a law that infringes on First Amendment rights. *See Doc.* 33 at 39. Otherwise, DeRaffele fails to explain what First Amendment rights may have been violated. Accordingly, we find that DeRaffele presently fails to state a claim for relief under the First Amendment, pursuant to § 1983. The claim should therefore be presently dismissed without prejudice.

### 6. The Fourth Amendment.

DeRaffele, who resides in New York, raises a claim for a violation of his Fourth Amendment rights, for the alleged searches of Apartments 1-R and 2-L, on July 28, 2014. DeRaffele alleges that he owned the property at 727-729 West 4th Street at the time in question, and he rented the property to other individuals who resided there.

The Fourth Amendment, incorporated to the states by way of the Fourteenth Amendment, protects an individual against an unlawful search or seizure by providing that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. CONST. amend. IV; *Miller v. Hassinger*, 173 F.App'x 948, 952 (3d Cir. 2006). An illegal search occurs when "an expectation of privacy that society is prepared to

consider reasonable is infringed," *Soldal v. Cook Cnty., Ill.*, 506 U.S. 56, 63 (1992), or when there is a physical intrusion of a constitutionally protected area, *United States v. Jones*, 132 S.Ct. 945, 951 (2012). In determining the reasonableness of the expectation of privacy in the situation we encounter here, property ownership alone is insufficient to confer standing to contest a search under the Fourth Amendment. *See DiBlasi v. Borough of East Rutherford*, No. 05-1980, 2006 WL 2246374, at *5 (D.N.J. Aug. 3, 2006)(collecting cases).

Here, DeRaffele does not allege that he resided in the apartments that were searched. He also fails to otherwise plausibly allege that, through other means, he had a reasonable expectation in the property when the searches occurred. Accordingly, DeRaffele's own Fourth Amendment claim, for the alleged searches of the property he owned but did not reside in, and rented to others, should be presently dismissed without prejudice because he lacks standing to assert this claim on his own behalf. *See also, Rozman v. City of Columbia Heights*, 268 F.3d 588, 591 (8th Cir. 2001)(rehearing en banc)(affirming the district court's ruling that plaintiff lacked standing to assert his tenants' rights on a claim that the city violated the Fourth Amendment by entering the tenants' apartments without their permission), *cert. denied*, 535 U.S. 971 (2002); *cf. Miata v. City of Daytona Beach*, No. 14-1428, 2015 WL 506287, at *3 (M.D. Fl. Feb. 6, 2015)(finding that the landlord-plaintiffs had standing to raise Fourth Amendment facial and as-applied

challenges to Daytona Beach's rental ordinance, but, notably, plaintiffs did not raise standalone § 1983 claims for a Fourth Amendment violation).

### 7. The Fifth Amendment.

The Fifth Amendment of the United States Constitution provides:

> No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury, except in cases arising in the land or naval forces, or in the militia, when in actual service in time of war or public danger; nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

U.S. CONST. Amend. V.   Similar to the purported claim under the First Amendment, the contours of DeRaffele's claim under the Fifth Amendment is unclear and underdeveloped.   In liberally construing the amended complaint, however, it would seem as though DeRaffele intends on raising due-process or equal-protection claims under this Amendment.   Unfortunately, the Fifth Amendment is not the proper vehicle because "[it] applies only to federal actors." *Kingsley v. Hendrickson*, No. 14-6368, 576 U.S. ---, 2015 WL 2473447, at *10 (June 22, 2015) (Scalia, J., dissenting).   In this case, DeRaffele does not name any federal actors and it would otherwise be futile to allow him to amend these claims assuming they are raised herein; thus, such claims under the Fifth Amendment

should be dismissed with prejudice.[6]

### 8. The Fourteenth Amendment.

DeRaffele unquestionably raises a due-process claim under the Fourteenth Amendment, pursuant to § 1983. The Fourteenth Amendment to the United States Constitution provides, in pertinent part, that a state shall not "deprive any person of life, liberty, or property, without due process of law; . . ." U.S. CONST. Amend. XIV, § 1. Due process under the Fourteenth Amendment has both "substantive and procedural components. *Evans v. Secretary of Pennsylvania Department of Corrections*, 645 F.3d 650, 658 (3d Cir. 2011). Only the procedural component is at issue in this litigation.

"To state a claim under § 1983 for deprivation of procedural due process rights, a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" *Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006)(citing *Alvin v. Suzuki*, 227 F.3d 106, 116 (3d Cir. 2000)).

For purposes of procedural due process, courts look to state law to determine whether a property interest exists. *Dee v. Borough of Dunmore*, 549 F.3d 225, 229 (3d Cir. 2008)(citing *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972)). An

---

[6]    DeRaffele also denies that he raises a claim under the Fifth Amendment's Takings Clause. *See Doc.* 56 at 10-12.

individual's ownership in property is a property interest protected by the Fourteenth Amendment, *see Shkedi v. City of Scranton*, No. 14-2069, 2015 WL 1505660, at *6 (M.D. Pa. April 1, 2015), and no party disputes this general proposition or whether DeRaffele has sufficiently alleged the same.

Turning to the second aspect of the procedural-due-process analysis, the fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976).  "'The Due Process Clause [also] entitles a person to an impartial and disinterested tribunal . . . .'  *Marshall v. Jericho*, 446 U.S. 238, 242 (1980). Indeed, 'it is axiomatic that '[a] fair tribunal is a basic requirement of due process.' *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009) (quoting *In re Murchinson*, 349 U.S. 133, 136 (1955))."  *Wallace v. Powell*, 2012 WL 2590150, at *7 (M.D. Pa. July 3, 2012).  To this end:

> Before one may be deprived of a protected interest . . . one is entitled as a matter of due process of law to an adjudicator who is not in a situation which would offer a possible temptation to the average man as a judge . . . which might lead him not to hold the balance nice, clear and true . . . . Even appeal and a trial *de novo* will not cure a failure to provide a neutral and detached adjudicator.

*Concrete Pipe & Prods. of Cal. v. Constr. Laborers Pension Trust for Southern Cal.*, 508 U.S. 602, 617-18 (1993)(internal quotations and citations omitted).

In the present case, DeRaffele primarily complains that the Board was not impartial at the hearing he received in September 2014.   Regardless of whether it is plausible that the Board was not impartial at the hearing, DeRaffele fails to show personal involvement on part of the individually-named defendants.   *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *see also, Sutton v. Rasheed*, 323 F.3d 236, 249 (3d Cir. 2003) (stating that a defendant in a civil rights action must have personal involvement to be liable).   Indeed, DeRaffele does not even allege that the named defendants were on the Board or that, for example, the Board members met, coordinated, agreed, or were in any way involved with the named defendants to deprive him of procedural due process protections.   In addition, DeRaffele does not point to a Williamsport policy or custom that caused him to be deprived of an impartial hearing.

We also recognize that a hearing should generally be held before a government deprives an individual of his or her property.   *See Elsmere Park Club, L.P. v. Town of Elsmere*, 542 F.3d 412 (3d Cir. 2008).   Of course, there are exceptions to this general rule, such as when "there is 'the necessity of quick action by the State,' or where 'providing any meaning predeprivation process would be impractical . . . .'" *Id.* at 417 (quoting *Parratt v. Taylor*, 451 U.S. 527, 539 (1981)).   Normally, the exception allowing for summary administrative action arises in emergency situations.   Even so, when emergency situations present themselves,

allowing for summary administrative action, post-deprivation remedies must still be available and adequate.  *Id.*

Here, we do not necessarily view the allegations as raising a complaint about the lack of any pre-deprivation hearings.  Nevertheless, to the extent it is an aspect of DeRaffele's claim under the Fourteenth Amendment, *see also, Docs.* 41 at 5-7 & 56 at 6-8, we find that it lacks merit.  Indeed, it is readily apparent to us that no pre-deprivation hearing was required when Apartment 1-R was condemned because the only reasonable inference that can be drawn from the current allegations is that the downed electrical wire presented an emergency situation. DeRaffele also does not provide any allegations to show that Evansky, who condemned the property, had any reason to believe the downed wire was inactive at the time.  In addition, as we read the allegations in the amended complaint, DeRaffele volunteered Apartment 2-L to be condemned, by "posting" it, so that he could attempt to rent the Second Floor Apartment at 729 West 4th Street.  Given his voluntary action, no pre-deprivation hearing was required.

Regarding the alleged condemnation of the Second Floor Apartment, we understand DeRaffele to be claiming that, pursuant to the Ordinance, the unit was wrongly condemned in that it was not where the illegal guns and drugs were discovered on July 28, 2014.  In other words, DeRaffele claims that, because the Second Floor Apartment was vacant and nothing illegal was discovered there,

there was no reason for its condemnation.  DeRaffele, though, does not properly or plausibly allege whether the condemnation of the Second Floor Apartment, for said reason, was done arbitrarily, with awareness or knowledge that it was not the actual unit where the drugs and guns were discovered.

As such, we find that no pre-deprivation hearing was required since the presence of illegal drugs and guns on a property pose many emergent questions for the surrounding community and the community at-large, permitting immediate condemnation.  We also recognize that DeRaffele fails to properly and plausibly show personal involvement on part of the individually-named defendants in not providing him with any pre-deprivation hearing or even with the condemnation of the unit itself.  DeRaffele's procedural-due-process claim under § 1983 should therefore be dismissed without prejudice at this stage.

### B. As-Applied and Facial Challenges to the Ordinance.

Solely focusing on the contents of his amended complaint, we understand DeRaffele to be raising an as-applied challenge to the Ordinance on due process grounds, along with a couple of facial challenges.  With respect to the perceived facial challenges, DeRaffele appears to assert that the Ordinance violates the Fourth Amendment in addition to the Equal Protection and Due Process Clauses of the Fourteenth Amendment.  As such, we will only address his challenge to the Ordinance on such grounds in this Report.  Moving forward, if DeRaffele is given

leave to further amend, we suggest that he clarify in his second amended pleading which and what type(s) of challenge(s) he is raising.  Of course, we recognize that he is a *pro se* litigant; thus, any second amended pleading he may be permitted to file will be construed liberally.[7]

Turning to the issue at hand, "[f]acial challenges and as-applied challenges fundamentally differ."  *Green Party of Pennsylvania v. Aichele*, No. 14-3299, 2015 WL 871150, at \*10 (E.D. Pa. Mar. 2, 2015).  "A facial challenge is [generally a constitutional] attack on a statute itself as opposed to a particular application."  *City of Los Angeles v. Patel*, 135 S.Ct. 2443, 2449 (2015).  In other words, "[a] facial attack tests a law's constitutionality based on its text alone and does not consider the facts or circumstances of a particular case."  *United States v. Marcavage*, 609 F.3d 264, 273 (3d Cir. 2010).  A plaintiff asserting such an attack "seeks to vindicate not only his own rights, but those of others who may also be adversely impacted by the statute in question."  *City of Chicago v. Morales*, 527 U.S. 41, 55 n. 22 (1999).

---

[7]     We fail to see how the First and Fifth Amendments are at all implicated in DeRaffele's pleading.  Moreover, while we recognize that the defendants discuss a series of facial challenges that DeRaffele could be raising, we do not address them all in this Report given the apparent inconsistencies in DeRaffele's briefs about the challenges he raises.  Nonetheless, we agree with the defendants about some of DeRaffele's constitutional challenges to the Ordinance on its face, to be discussed, *infra*.

"Under the most exacting standard the [Supreme] Court has prescribed for facial challenges, a plaintiff must establish that a 'law is unconstitutional in all of its applications.'" *Patel*, 135 S.Ct. at 2451 (quoting *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 (2008)); *see Heffner v. Murphy*, 745 F.3d 56, 65 (3d Cir. 2014).   When assessing whether a statute meets this standard, we must consider only applications of the statute within its reach. *See Patel,* 135 S.Ct. at 2451.

An as-applied attack, on the other hand, "does not contend that a law is unconstitutional as written but that its application to a particular person under particular circumstances deprived that person of a constitutional right." *Marcavage,* 609 F.3d at 273.   Reasonably so, it follows that an "individual cannot argue that a statute is unconstitutional as it is applied to third parties not before the court."   E. Chemerinsky, "Constitutional Law Principles and Policies" § 2.5, p. 87 (4th ed. 2011).

"The distinction, then, between facial and as-applied challenges goes to the scope of the statute's claimed constitutional infirmity and the breadth of the remedy sought. *See Citizens United v. Federal Election Commission*, 558 U.S. 310, 331 (2010)." *Aichele*, 2015 WL 871150, at * 11.

> The remedy for a facial challenge is the broad invalidation of the statute in question, but the remedy for an as-applied challenge bars its enforcement against a particular plaintiff alone under narrowed circumstances. *See CMR D.N. Corp. v. City of Philadelphia*, 703 F.3d 612, 624 (3d Cir. 2013); *accord Voting for America, Inc. v. Andrade*, 488 F. App'x 890, 916–17 (5th Cir. 2012). Our Court of Appeals has also cautioned that district courts granting injunctions in such cases "should craft remedies 'no broader than necessary to provide full relief to the aggrieved plaintiff.'" *Belitskus v. Pizzingrilli*, 343 F.3d 632, 649–50 (3d Cir. 2003) (quoting *McLendon v. Continental Can Co.*, 908 F.2d 1171, 1182 (3d Cir. 1990)). For that reason, the "usual judicial practice" is to address an as-applied challenge before a facial challenge. *United States v. Mitchell*, 652 F.3d 387, 406 (3d Cir. 2011)(internal citations omitted).

*Id.*

### 1. As-Applied Challenge.

We liberally view DeRaffele's allegations in the amended complaint as solely challenging the Ordinance, as applied, on due process grounds. Specifically, we understand DeRaffele to claim that he was denied procedural-due-process protections in that the Board was not impartial during the post-deprivation hearing he received. We also conceive that DeRaffele challenges the Ordinance, as applied, on procedural-due-process grounds in that he did not receive pre-deprivation hearings when his apartment units were allegedly condemned.

We repeat here that the Fourteenth Amendment to the United States Constitution provides, in relevant part, that a state shall not "deprive any person of life, liberty, or property, without due process of law; . . ." U.S. CONST. Amend.

XIV, § 1.  Due process under the Fourteenth Amendment has both "substantive and procedural components.  *Evans v. Secretary of Pennsylvania Department of Corrections*, 645 F.3d 650, 658 (3d Cir. 2011).  Only the procedural component continues to be at issue.  Furthermore, DeRaffele most certainly alleges that he has a property interest in the 727-729 West 4th Street property *via* his purported ownership of the same.

### a.  Pre-Deprivation Hearings.

Regarding whether procedural-due-process protections were denied, a pre-deprivation hearing should generally be held notwithstanding an emergency situation.  *See, supra, Elsmere Park Club*, 542 F.3d at 417-18.  For the reasons previously addressed, *supra*, however, we fail to see how it is plausible that the Ordinance violated DeRaffele's due-process rights because he was not provided with a pre-deprivation hearing when each of his apartments were allegedly condemned.

### b.  An Impartial Tribunal.

As mentioned, a fair and impartial tribunal is a fundamental aspect of procedural due process.  *See, supra, Wallace*, 2012 WL 2590150, at *7.  According to DeRaffele, the Board was not impartial at the post-deprivation hearing he received in September 2014, relating to the condemnation of the Second Floor Apartment.

In framing this aspect of his procedural-due-process claim and challenging the Ordinance as applied to him, DeRaffele alleges that the Board was nominated and selected by Campana, and approved by Williamsport's City Council. *Doc.* 5 at ¶ 4, p. 4; *see also, Doc.* 5-1 at 21. DeRaffele further alleges that the Board is "made up of a group of hand-selected mayoral friends and puppets and is in no way impartial towards the landlords and the tenants of [Williamsport]." *Id.* As well, the Board includes "a token black member." *Id.* at ¶15, p. 10.

At the hearing he received, DeRaffele claims that the Board asked "discriminatory questions" and had discriminatory "beliefs." *Id.* at ¶ 16, p. 10. Moreover, the Board, according to DeRaffele tried to "extrapolate from [him that it] was his duty to violate the rights of his tenants." *Id.* at ¶ 16, p. 10-11. In pertinent part, DeRaffele also claims that prior to the search of his property by the police officials, he had no knowledge of any drug use or noise complaints, and no evidence to cause him to speculate about the illegal activities of his tenants. In addition, DeRaffele claims that he was never notified that anyone other than his three tenants resided at those properties. Yet, DeRaffele claims, one of the Board members "suggested that it was [his] duty and obligation to know what went on behind closed doors and suggested that [he] was unfit to be a landlord in [Williamsport]." *Id.* at ¶23, p. 27. Other Board members stated on the record at the hearing that it was a landlord's duty to know everything that went on behind a

tenant's closed doors; that DeRaffele should have been aware of the illegal drugs and guns stored at Apartment 2-L; and that DeRaffele's maintenance men were not doing their job by not know anything about the illegal activities of his tenants. *Id.* at ¶ 23, p. 28.  The Board, though, never discussed the searches that occurred on July 28, 2014, or that the wrong apartment had been condemned, in that the Second Floor Apartment was not where the drugs and guns were discovered by police. Moreover, when DeRaffele directed his responses and questions to the Board's members, he received no replies.  After DeRaffele stated his position, he also stated that he felt the Board was not impartial and voluntarily terminated the hearing.  In all, DeRaffele avers that "bogus evidence and testimony were presented and taken as fact when, in fact, they were non-factual and erroneous." *Id.* at ¶ 28, p. 36.  After terminating the hearing, DeRaffele alleges in the amended complaint that he never received a decision from the Board.  *Id.*

Based on these allegations, we find it implausible that DeRaffele did not receive an impartial hearing.  As an initial matter, DeRaffele does not suggest that the Board had actual knowledge, outside of his own personal statements during the hearing, that the wrong unit had been condemned.  We also lack the identity of the Board members so as to draw reasonable inferences that they may have had sufficient ties to Campana and / or related Williamsport entities such that they had an invested interest in upholding the City's decision to have the Second Floor

36

Apartment condemned, rather than providing for an objective review.  Moreover,

given DeRaffele's alleged account of what transpired during the hearing, it does

not appear than any extraneous matters were discussed, and DeRaffele does not

deny that illegal drugs and guns were found inside one of his units at the same

property, i.e., 727-729 West 4th Street, albeit in Apartment 2-L, not the Second

Floor Apartment. In short, DeRaffele's as-applied challenges to the Ordinance, on

due-process grounds, should presently be dismissed without prejudice.

### 2.  Facial Challenges.

Again, we also liberally construe the amended complaint as raising a series

of facial challenges to the Ordinance.  In reviewing his challenges, as alleged in the

amended complaint, we are cognizant that:

> Federal courts sitting in judgment of a local municipality's
> legislative acts owe the municipality a degree of deference in its
> determination of local needs and preferences. *Minnesota v.
> Clover Leaf Creamery Co.*, 449 U.S. 456, 469 (1981).  Local
> legislative acts enjoy a 'presumption of rationality that can only
> be overcome by a clear showing of arbitrariness and
> irrationality.'  *Hodel v. Indiana*, 452 U.S. 314, 331-32 (1981).
> 'This is a difficult presumption to overcome.'  *Smith v. Lower
> Merion Township*, 1992 WL 112247, at *2 (E.D. Pa. May 11,
> 1992).

*Bloomsburg Landlords Ass'n, Inc. v. Town of Bloomsburg*, 912 F.Supp. 790, 798

(M.D. Pa. Dec. 29, 1995)(McClure, J.), *aff'd*, 96 F.3d 1431 (Table)(3d Cir. 1996);

*see Lopez v. City of Oil City*, No. 07-206 Erie, 2008 WL 906521, at *3 (W.D. Pa.

Mar. 31, 2008)(same).  With this in mind, the stated purpose of the Ordinance "is

to enhance the safety of non-owner occupied properties through a system of inspections, and penalties for failure to comply with the City's laws, which focuses on compliance with the basic property maintenance codes covering existing structures, and criminal laws prohibiting illegal activity in [Williamsport]." *Doc.* 5-1 at 2.   A municipality's interest in the safety and welfare of its citizens is legitimate.   *See D'Angio v. Borough of Nescopeck*, 34 F.Supp.2d 256, 264 (M.D. Pa. 1999).

### a.  Equal Protection.

Throughout the amended complaint, DeRaffele appears to challenge the Ordinance on its face, on grounds that it violates the Equal Protection Clause. More precisely, DeRaffele first alleges that the Ordinance's true purpose is to rid the City of "low income minority groups."   *See, e.g., Doc.* 5 at ¶ 26, p. 30-31; *accord id.* at ¶ 11, p. 6.   The Equal Protection Clause of the Fourteenth Amendment commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. *City of Cleburne, Texas v. Cleburne Living Center*, 473 U.S. 432, 439 (1985) (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982)); *Artway v. Attorney General of New Jersey*, 81 F.3d 1235, 1267 (3d Cir. 1996).

38

On its face, there are simply no classifications established in the Ordinance, insofar as financial and / or racial status is concerned. *See Doc.* 5-1 at 1-29.  In this regard, the Ordinance appears to apply equally to all individuals within its scope. *Id.*

DeRaffele further appears to assert that the Ordinance is discriminatory, in violation of the Equal Protection Clause, in that it appears to distinguish between landowners who reside in Williamsport and those that do not. *See Doc.* 5 at ¶ 20, p. 23.  DeRaffele, however, does not point to any such provisions in the Ordinance, and it appears to us that the only provision perhaps drawing such a distinction is the one requiring a landowner not residing in Williamsport to designate a property manager who shall reside in Lycoming County. *See Doc.* 5-1 at 13.  Certainly such a requirement is rationally related to the City's legitimate interest in promoting the safety and welfare of the community, which is the stated purpose of the Ordinance, by requiring someone nearby to oversee the property and its occupants.  Also, no higher level of review is warranted since the class described is neither suspect nor quasi-suspect, and no fundamental right plausibly appears to be burdened. *See Berwick Area Landlord Association v. Borough of Berwick*, No. 07-316, 2007 WL 2065247, at *8 (M.D. Pa. July 16, 2007)(McClure, J.)("[A] suspect class or quasi-suspect class is one that has been historically used for discrimination, such as race, national origin, religion, alienage, and gender.");

*accord id.* at *7 ("[I]f no suspect or quasi-suspect class is involved and no fundamental right is burdened, a state may create a classification so long as it is rationally related to a legitimate state interest.")(quoting *Kimel v. Florida Board of Regents*, 528 U.S. 62, 83 (2000)).

Next, similar to the *Berwick* court, *see* 2007 WL 2065247, at *7, we construe DeRaffele's complaint about Section 2-1749.04(c)(2) to be a claim for an equal-protection violation. *See Doc.* 5 at ¶ 22. To that end, we liberally construe the amended complaint to include a claim that this section burdens a tenant's fundamental right to establish a home, in comparison to homeowners who have no such restrictions placed upon them.

Standing issues aside, Section 2-1749.04(c)(2) provides that "[a]n Owner or Manager shall not permit anyone other than the Tenant(s)/Occupant(s) or person(s) otherwise listed within the written rental agreement to permanently reside in the Residential Rental Unit, except children under the age of 21 as listed on the rental agreement / lease." *Doc.* 5-1 at 13. This section, like the others, forms part of a comprehensive regulatory scheme for residential rental properties, and we do not read this section as substantially interfering with family living arrangements. *See Lyng v. Castillo*, 477 U.S. 635, 638 (1986)(holding a federal law constitutional because it did not "'directly and *substantially*' interfere with family living arrangements and thereby burden a fundamental right.")(Emphasis added). The

40

section, if anything, puts a slight burden on family arrangements by requiring them to be named on the lease in order to permanently reside at a particular property in Williamsport.  Moreover, this section is rationally related to the legitimate interests promoted by the Ordinance to the extent that landlords and / or property owners will have a better grapple on knowing who resides where in order to help curb criminal activity and civil disobedience within the City limits, which is a primary reason for the Ordinance's enactment.  *See also, Berwick*, 2007 WL 2065247, at *8 ("Landownership does not fall into [the suspect or quasi-suspect] categor[ies].").

DeRaffele's equal-protection claims, challenging the facial validity of the Ordinance, should therefore be dismissed with prejudice.

**b.  Due Process.**

We also read the amended complaint to include facial challenges to the Ordinance on due-process grounds.  Indeed, DeRaffele complains that Sections 2-1749.04(c), (d), (e), (f), and (g), as well as, the entirety of Sections 2-1749.05 and 3-1749, violate due process.[8]  *See Doc.* 5 at ¶ 21 (p. 25) & ¶ 24.  In the amended complaint, however, DeRaffele provides little explanation as to how these provisions so violate the Due Process Clause; much less does he show that they are

---

[8]  The defendants proceed to address these sections of the Ordinance as if it is obvious what DeRaffele alleges; however, to us, it is not so clear.  Therefore, to avoid potentially engaging in an exercise of futility, we focus solely on the contents of what is pleaded in the amended complaint, which is confusing and without much support showing that a right has been, or is being, violated.

unconstitutional in all pertinent applications. *See id.* Furthermore, we are not going to engage in any unfounded speculation about his claims, which should presently be dismissed without prejudice.

### c. Fourth Amendment.

According to DeRaffele, the Ordinance impermissibly requires landlords / property owners to investigate and monitor their tenants, in violation of the Fourth Amendment. *See Doc.* 5 at ¶¶ 19 (p. 21), 21 (p. 25), 23 (pp. 26-27). More precisely, DeRaffele avers that the Ordinance, i.e., Section 2-1749.04, requires landlords / property owners to install cameras or listening devices, or both, into owned properties. *See id.* at ¶ 23, p. 26. Furthermore, DeRaffele alleges that Orwig and the Board suggested to him that the property managers should go through the tenants' closets and drawers, and search the properties in order to ensure that only individuals on the lease were permanently residing there. *Id.* at ¶ 23, p. 28.

Under Fourth Amendment jurisprudence, an illegal search occurs when "an expectation of privacy that society is prepared to consider reasonable is infringed," *Soldal*, 506 U.S. at 63, or when there is a physical intrusion of a constitutionally protected area, *Jones*, 132 S.Ct. at 951. "The purpose of this amendment is 'to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials.'" *Berwick,* 2007 WL 2065247, at * 9 (quoting *Camara v.*

*Municipal Court*, 387 U.S. 523, 528 (1967)).  "Thus, a search of private property without consent is 'unreasonable' unless authorized by a search warrant or [there] exists a warrant exception."  *Id.*

"[F]acial challenges under the Fourth Amendment are not categorically barred or especially disfavored."  *Patel*, 135 S.Ct. at 2449.  "[Such challenges, however] are unlikely to succeed when there is substantial ambiguity as to what conduct a statute authorizes: Where a statute consists of 'extraordinarily elastic categories,' it may be 'impossible to tell' whether and to what extent it deviates from the requirements of the Fourth Amendment."  *Id.* at 2450 (quoting *Sibron v. New York*, 392 U.S. 40, 59, 61, n. 20 (1968)).

Here, Section 2-1749.04 provides, in relevant part:

> (a) ***General.***  [E]very Owner/Landlord shall be responsible for monitoring the conduct and activities of the Occupants that take place at any and every Residential Rental Unit he or she owns [in Williamsport].  Every Owner shall also be responsible for monitoring the conduct and activities of the Occupants that take place at any and every Residential Rental Unit he or she owns in [Williamsport].  This Section shall not be construed to diminish or relieve, in any way, the responsibility of Occupants or their Guests for their conduct or activity, nor shall it be construed as an assignment, transfer, or protection of any responsibility or liability which Occupants or their Guest may have as a result of their conduct or activity under any private cause of action, civil or criminal enforcement proceeding, or criminal law to the Owner / Landlord.

*Doc.* 5-1 at 11.  No other section within the Ordinance appears to impose any type of monitoring requirement upon landlords / property owners.

43

To the extent this section can seriously be read as making landlords / property owners agents of the municipality, qualifying their actions as the kind to be protected by the Fourth Amendment, DeRaffele fails to plausibly suggest that it is unconstitutional in all of its applications.   To that end, this section does not define the term "monitor," much less does it define the term as narrowly as DeRaffele does in the amended complaint, by requiring electronic surveillance inside of a home or apartment.   Furthermore, we do not question that this provision is rationally related to the legitimate interest promoted by the Ordinance.   This claim, challenging the facial validity of the Ordinance, should therefore be dismissed with prejudice.

### C. State-Law Claims.

Still remaining are DeRaffele's claims, which we construe as sounding in state law, that: (1) his tenants were harassed on August 3, 2014; (2) he was threatened and intimidated by Foresman, Orwig, and Miller; and (3) he was lied to by Campana.   Since we recommend the dismissal of all identified federal claims, over which we have original jurisdiction, we likewise recommend that the Court declines to exercise supplemental jurisdiction over these remaining claims, sounding in state law.   *See* 28 U.S.C. § 1367(c)(3).

## IV.   Recommendations.

Accordingly, **WE RECOMMEND** that:

(1) The defendants' motion (*Doc.* 8) to dismiss be **GRANTED**;

(2) DeRaffele be granted leave to amend any claims to be dismissed without prejudice;

(3) DeRaffele's motion (*Doc.* 25) for a preliminary injunction be **DENIED** as moot;

(4) DeRaffele's motion (*Doc.* 38) "to resubmit" be **DENIED** as moot; and

(5) The defendants' motion (*Doc.* 48) to abstain be **DENIED** without prejudice as moot.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen  (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified  proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law,

and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Failure to file timely objections to the foregoing Report and Recommendation may constitute a waiver of any appellate rights.

Submitted this **19th** day of **August, 2015**.

*__S/ Susan E. Schwab__*
Susan E. Schwab
United States Magistrate Judge